UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| TERESA CUNNINGHAM, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | No. 3:19-cv-00314-SKL |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| *Defendant*. ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Teresa Cunningham ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits ("DIB") and supplemental security income ("SSI"). Each party has moved for judgment [Doc. 11 & Doc. 15] and filed supporting briefs [Doc. 12 & Doc. 16]. For the reasons stated below: (1) Plaintiff's motion for summary judgment [Doc. 11] will be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 15] will be **GRANTED**; and (3) the decision of the Commissioner will be **AFFIRMED**.

## **I.   ADMINISTRATIVE PROCEEDINGS**

According to the administrative record [Doc. 5 ("Tr.")], Plaintiff filed her applications for DIB and SSI in January 2017, alleging disability beginning August 8, 2016. Plaintiff's claims were denied initially and on reconsideration at the agency level. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held on June 12, 2018, in Knoxville, Tennessee. On March 13, 2019, the ALJ found Plaintiff was not under a disability as defined in the Social Security Act at any time from the alleged onset date through the date of the decision.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed the instant action.

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

Plaintiff was born September 24, 1959 (Tr. 22). She has at least a high school education and is able to communicate in English. She has past relevant work as a school social worker, which is classified in the Dictionary of Occupational Titles[1] ("DOT") as a skilled job, performed at the light exertional level.

### B. Medical Records

In her Disability Report, Plaintiff alleged disability due to bipolar disorder and "vision loss left eye" (Tr. 210). While there is no need to summarize the medical records herein, the relevant records have been reviewed.

### C. Hearing Testimony

At the hearing before the ALJ on June 12, 2018, Plaintiff and a vocational expert ("VE") testified. Plaintiff was represented by counsel at the hearing. The Court has carefully reviewed the transcript of the hearing (Tr. 30-62).

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

---

[1] *Available at*: www.oalj.dol.gov/LIBDOT.HTM.

of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)).  A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)).  The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process.  20 C.F.R. § 404.1520(a)(4)(i-v).  The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted).  The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is

3

capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (citations omitted).

B.   **The ALJ's Findings**

Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. At step one of the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date, March 28, 2013. At step two, the ALJ found Plaintiff had the following severe impairments: (1) delusional disorder, (2) bipolar disorder, (3) generalized anxiety disorder, and (4) decreased vision in the left eye. The ALJ found Plaintiff also had several non-severe impairments, including irritable bowel syndrome, obesity status post gastric bypass surgery, hypertension, and vertigo. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels, *see* 20 C.F.R. §§ 404.1567 & 416.967, with the following nonexertional and mental restrictions:

- She cannot perform work activity that requires binocular vision
- She can perform only simple tasks
- She is limited to work where interaction with co-workers, supervisors, and the public is occasional and where changes in the workplace are occasional.

(Tr. 20). At step four, the ALJ found Plaintiff was unable to perform her past relevant work as a school social worker. At step five, however, the ALJ found Plaintiff was capable of performing

4

other types of work with jobs existing in substantial numbers in the national economy, including as a coffee maker, a sandwich maker, and a dining room attendant (Tr. 23).

These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Social Security Act at any time between the alleged onset date and the date of the decision.

## IV.    ANALYSIS

Plaintiff argues the ALJ's decision should be reversed and remanded, either for an award of benefits or at least for further administrative proceedings. She argues:

> The ALJ committed reversible error by improperly relying on and assigning great weight to Plaintiff's GAF scores, in direct contravention of Administrative Message 13066 (hereinafter, "AM-13066"), in which the Agency announced a new policy that GAF scores no longer may be used to conduct a mental RFC assessment. Instead, GAF scores are to be treated as opinion evidence and adjudicators are instructed that GAF scores cannot be used to draw reliable inferences. Thus, GAF scores are not considered dispositive of impairment severity. The ALJ's reliance on said GAF scores as a basis to deny disability benefits violates the both the spirit and intent of the Agency's new policy directive.

[Doc. 12 at Page ID # 1019]. The Commissioner responds that the ALJ "properly considered the record as a whole, including the GAF scores, in determining Plaintiff's RFC." [Doc. 16 at Page ID # 1043]. The Commissioner contends that the "ALJ's determination is consistent with the record, including the medical opinions, Plaintiff's improvement with medical treatment, and the medical evidence." [*Id.* at Page ID # 1043].

### A.    Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r*

5

*of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). The United States Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also McClanahan*, 474 F.3d at 833. Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (citations omitted); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971) (citation omitted). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is

6

under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

  **B.** **GAF Scores**

Regarding Plaintiff's GAF scores, the ALJ first detailed the scores Plaintiff has received since 2015:

> The record shows the claimant has a history of mental health treatment prior to the alleged disability onset date. 2013 records indicate the claimant was diagnosed with bipolar I disorder and delusional disorder for which she was prescribed medications (Exhibit 3F, p. 6). 2014 record[s] indicate she was doing well at work and at home (Exhibit 3F, p. 19). 2015 records indicate the claimant was feeling stress at work, but she declined the recommendation of intensive outpatient treatment. However, records show she applied for one day a week of absence from work under FMLA and that she was assigned a GAF score of 55, which indicates moderate symptoms (Exhibit 3F, pp. 41, 42, 43). February 2016 records show the claimant was diagnosed with bipolar disorder in partial remission, delusional disorder, and generalized anxiety disorder and was assigned a GAF score of 65, which indicates mild symptoms (Exhibit 5F, p. 28). She continued mental health treatment and was assigned GAF scores ranging from 55 to 65 (Exhibit 5F). In January of 2017, the claimant reported that she retired rather than risk termination and was concerned about making less income. The record shows no change in her diagnoses and she was assigned a GAF score of 55. March 14, 2017, treatment records show[] a benign mental status exam with euthymic mood and the claimant was assigned a GAF score of 60. On June 13, 2017, the claimant reported that she "feels 100% better" (Exhibit 8F). The treatment record establishes that the claimant had a benign mental

7

status examination on July 11, 2017, with a GAF score of 60. Treatment notes from August to October 2017 show no mental limitations or abnormalities and a GAF score of 70 (Exhibit 12F). The claimant had a benign mental status examination on December 20, 2017. She was given a GAF score of 70. On March 5, 2018, the claimant reported that she was doing great, but that she was depressed about the fact that she is not losing more weight since she works out 3-4 times per week (Exhibit 13F).

As for the opinion evidence, on June 14, 2018, Melissa McCarter, a nurse practitioner, reported that she has been treating the claimant for the past 18 months. Nurse McCarter opined that the claimant had a fair ability to maintain attention and concentration. In her opinion, however, the claimant had a poor ability to adapt to or deal with work stress, behave in an emotionally stable manner, relate predictably in social situation, and deal with the public and relate to peers, coworkers, or supervisors. She was also found to have a poor ability to work at a consistent pace. These opinions were also signed by Dr. Burnside (Exhibit 7F). These opinions are given little weight, as the objective medical evidence does not support this level of limitation. For example, the record shows the claimant consistently had benign mental status examinations. At least one treatment note indicates the claimant reported she had 100% improvement and was doing well. Moreover, these opinions are not consistent with the assigned GAF scores of 55 or 70, indicating moderate to mild to no symptoms.

Ms. McCarter also reported that the claimant will probably not be able to work full time again, which report was signed by Dr. Burnside (Exhibit 12F, p. 4). Little weight is given to this opinion, as it is speculative, and the issue of whether an individual is able to work is an issue reserved to the Commissioner.

Some weight has been given to the GAF scores ranging from 55-70. The undersigned gives great weight to the GAF scores ranging from 55-60, which indicate moderate symptoms, as these scores are consistent with the overall record of moderate limitations, as discussed herein. However, little weight is given to the GAF scores above 60, indicating mild to no limitations, as the longitudinal record supports moderate limitations.

(Tr. 21-22).

In 2013, the SSA released Administrative Message 13066 (AM-13066), which has since been revised twice, though the parties do not argue the newer versions differ in any material way from the original.[2] It "does indeed note several problems with using GAF scores to evaluate disability, such as the fact that the GAF scores are not standardized, they are not designed to predict the outcome of treatment, and the GAF scores are very general and therefore need sufficient supporting detail to have any significant meaning." *Yee v. Comm'r of Soc. Sec.*, No. 17-cv-10328, 2018 WL 2181466, at *6 (E.D. Mich. Jan 31, 2018). Nevertheless, "[d]espite these flaws, AM-13066," including the current version, provide that "a GAF score **is a medical opinion** under the Regulations and that it should be considered by the ALJ in conjunction with all of the other relevant record evidence when assessing disability claims involving mental disorders." *Id.* (emphasis added). ALJs are instructed to "follow the articulation requirements for these categories of evidence [medical opinions] as provided in our regulations . . . ." [Doc. 16-1 at Page ID # 1055]; *see also Vargas v. Berryhill*, No. 18-1121, 2019 WL 3036533, at *8 n.12 (E.D. Pa. Jan. 30, 2019) (ALJ was entitled to treat GAF scores "as medical opinion evidence" in claim filed before March 27, 2017.).

Despite classifying GAF scores as medical opinions, subject to normal "articulation requirements," AM-13066 Rev 2 instructs ALJs not to "[r]ely solely upon a GAF rating to support a disability determination or decision," or to "[e]quate a particular GAF rating with a particular mental residual functional capacity assessment." [Doc. 16-1 at Page ID # 1055]. AM 13066 Rev 2 further instructs:

---

[2] AM-13066 Rev 2, the current version and the version applicable to this case, is attached to the Commissioner's memorandum [Doc. 16-1].

9

> When case evidence includes a GAF rating from a medical source, the adjudicator must consider the GAF rating and the medical source's support for assigning that specific rating, along with all of the relevant evidence in the claim. In cases where there are multiple GAF ratings from a provider, the articulation requirement for claims filed before March 27, 2017 can be addressed through a "representative" GAF rating if the GAF scores are similar or, when the GAF ratings are significantly divergent, by addressing whether the range of GAF ratings is supported by the evidence of record.

[*Id.* at Page ID # 1055]. Regardless, however, AM-13066 Rev 2 indicates that the "problems with a GAF rating make it inherently of little evidentiary value in our adjudication process." [*Id.* at Page ID # 1054].

First, Plaintiff argues the ALJ's decision is confusing because the ALJ wrote that she assigned "some weight" to the GAF scores "ranging from 55-70," but then immediately wrote that she assigned "great weight" assigned to the GAF scores ranging from 55-60, and "little weight to the GAF scores above 60" (Tr. 22). In spite of Plaintiff's argument, a fair reading of the decision is that the ALJ assigned much greater weight to the lower scores and little-to-no weight to the higher scores which, on balance, resulted in "some weight" to the GAF scores overall. Plaintiff's first argument is unavailing.

Next, Plaintiff argues the ALJ did not properly explain her reasoning for the weight assigned to Plaintiff's GAF scores. Plaintiff contends:

> [T]he ALJ merely states the GAF scores between 55 and 60 are consistent with "moderate" symptoms/functional limitations, as demonstrated in the record. (TR, age 22). That's it. Nowhere does the ALJ assert whether Nurse McCarter is an acceptable medical source to offer GAF ratings. Apparently, the nurse is, however, the ALJ, a few paragraphs prior, outright dismisses Nurse McCarter's medical opinion. So, the ALJ finds great evidentiary value in Nurse McCarter's GAF ratings, which AM-13066 instructs must be treated as opinion evidence, standing alone, but no evidentiary value in that same treating source's opinion regarding the Plaintiff's ability to

10

> function in a full-time setting. With all due deference to the
> adjudicator of fact, it is difficult to understand how a treating source
> can be inherently reliable and unreliable in the same instance.

[Doc. 12 at Page ID # 1024].

Again, in spite of Plaintiff's contrary argument, a fair reading of the ALJ's decision is that she found the record consistent with the more mild/moderate GAF scores than with the more extreme restrictions opined to by Nurse McCarter and Sharon Burnside, M.D., including that Plaintiff had a "poor ability" to perform many mental functions, including adapting to workplace stress, behaving in an emotionally stable manner, relating predictably in social situations, and working at a consistent pace (Tr. 515-16). Contrary to Plaintiff's argument, the ALJ did identify evidence conflicting with these more extreme restrictions. As the ALJ noted, "the record shows the claimant consistently had benign medical examinations," including at least one treatment note which indicated Plaintiff had "100% improvement and was doing well." (Tr. 21). As noted in the quoted section above, the ALJ emphasized that treatment notes from August to October 2017 "showed no mental limitations or abnormalities," and in 2018, Plaintiff reported she was doing great; she only felt some depression because she was consistently exercising but not losing weight (Tr. 21). The ALJ also cited the opinions from the State Disability Determination Services ("DDS") nonexamining psychological consultants, who reviewed Plaintiff's mental health records and found only she had no more than moderate mental functioning limitations (Tr. 22).

As to Plaintiff's other arguments, the Court notes Plaintiff is correct the ALJ did not specifically note whether she considered Nurse McCarter, who assigned a number of the GAF scores,[3] to be an acceptable medical source ("AMS"), but it is clear from the decision that the ALJ

---

[3] A few of the earlier GAF scores in the record were assigned by Kathleen Goynes, M.D. Dr.

11

did treat her as such. AM 13066 Rev 2 distinguishes between GAF scores assigned by an AMS vs. GAF scores assigned by a medical source who is not an AMS. It holds that a GAF score from an AMS must be treated as a "medical opinion," while a GAF score from a non-AMS is simply treated as an "opinion." [Doc. 16-1 at Page ID # 1054-55].

Nurse McCarter is an "APN-BC," which the ALJ found to be a type of nurse practitioner (Tr. 21); *see also* Tenn. Code Ann. § 63-7-126(a); *Swafford v. Colvin*, No. 3:12-cv-00614, 2015 WL 1931438, at *3 (M.D. Tenn. Apr. 28, 2015) (identifying "APN" as "Advanced Practice Nurse"). Traditionally, nurse practitioners have *not* been considered "acceptable medical sources." *See* 20 C.F.R. § 404.1513(d)(1) (version eff. until Mar. 26, 2017) (listing nurse practitioners as "other sources" rather than "acceptable medical sources"). Here, however, many of the GAF scores assigned by Nurse McCarter are co-signed by Dr. Burnside (Tr. 484-85, 491, 506, 523, 526, 927, 930, 936, 939, 942, 945, 951, 954, 957). The parties do not appear to dispute that these GAF scores should be classified as coming from a treating AMS, nor do they distinguish between the GAF scores co-signed by Dr. Burnside and those appearing in treatment records not co-signed by Dr. Burnside.[4] Accordingly, the GAF scores are considered "medical opinions." AM-13066 Rev 2 indicates that "[a]djudicators will follow the articulation requirements for these categories of evidence as provided in our regulations . . . ." [Doc. 16-1 at Page ID # 1055].

---

Goynes was Plaintiff's treating physician until 2016, when, Plaintiff asserts, "Nurse McCarter assumed Plaintiff's mental health treatment from Dr. Goyne." [Doc. 12 at Page ID # 1017]. While Plaintiff mentions the GAF scores assigned by Dr. Goyne, her argument concerns the ALJ's treatment of the GAF scores assigned by Nurse McCarter.

[4] *See* Tr. 488, 494, 497, 500, 503, 948.

12

The AM's revised instruction that GAF scores be treated as medical opinions, "appear[] to conflict with Sixth Circuit case law that ALJs are not required to consider GAF scores." *Beckett v. Comm'r of Soc. Sec.*, No. 1:17-CV-303, 2019 WL 183830, at *4 (E.D. Tenn. Jan. 14, 2019) (citing *McCoy v. Comm'r of Soc. Sec.*, No. 3:15-cv-2308, 2016 WL 6565559, at *14 (N.D. Ohio Nov. 4, 2016); *Walsh v. Colvin*, No. 3:15-cv-1708, 2016 WL 1752854, at *17 (N.D. Ohio May 3, 2016); *Rivera v. Comm'r of Soc. Sec.*, No. 1:13-cv-337, 2015 WL 4550329, at *9 (E.D. Tenn. July 28, 2015). Given the revised instruction, this Court held more recently that in light of AM-13066 as revised, ALJs are required to "discuss the weight given" to a treating physician's GAF rating, and to provide "good reasons" in their decisions for discounting a treating provider's GAF rating, consistent with the so-called treating physician rule. *Beckett*, 2019 WL 183830, at *4.

Regardless, Plaintiff's argument is **not** that the ALJ erred by failing to treat Nurse McCarter's GAF scores with the deference typically afforded to treating sources.[5] Plaintiff's argument, as the Court interprets it, is that the ALJ erred by being **too deferential** to Nurse McCarter's assigned GAF scores, without giving an adequate explanation. The Court disagrees.

Plaintiff argues:

> If the ALJ wanted to rely on GAF scores as a basis to deny disability, which Plaintiff argues she did, she was duty bound to discuss why or why not Nurse McCarter was an acceptable medical source to offer GAF ratings, to address the variations in ratings over time, to weigh the GAF scores against the longitudinal history and to address how the rater explained his/her ratings and the periods to which they

---

[5] Any error relating to the treating physician rule as applied to the GAF scores would be harmless, because the ALJ made findings consistent with the lower GAF scores (that is, moderate mental limitations). *See Thaxton v. Comm'r of Soc. Sec.*, No. 19-6295, 2020 WL 3057407, at *5 (6th Cir. June 9, 2020) (a procedural error, such as one involving the treating source rule, "may be considered harmless if . . . 'the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion'" (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

13

> pertained. (AM-13066). None of this is present in the ALJ's discussion of the evidence or her ultimate conclusions. Accordingly, the Plaintiff avers these egregious errors of law render the ALJ's decision untenable and invalid.

[Doc. 12 at Page ID # 1026-27].

The Court has already addressed Nurse McCarter's status as an AMS—the parties do not dispute this issue as it pertains to Nurse McCarter, and the ALJ treated her opinions (co-signed by Dr. Burnside) as such. The ALJ also addressed the variations in the ratings over time and weighed them against the longitudinal history, as Plaintiff puts it. As quoted earlier in this opinion, the ALJ explained the history of Plaintiff's mental impairments in detail, including the fluctuations in her GAF scores, which sometimes corresponded to specific events in Plaintiff's life, like being forced to retire. The ALJ clearly acknowledged the nature and extent of Plaintiff's relationship with Nurse McCarter as well, even if the ALJ did not specifically discuss that Nurse McCarter was a mental health nurse. It is obvious from the decision the ALJ was aware of Nurse McCarter's specialty and role in Plaintiff's care. The ALJ explained that extreme limitations were not consistent with "benign mental status examinations," and other treatment notes, or with the DDS psychological consultants' findings (Tr. 21). It is worth noting the ALJ assigned "little weight," but not no weight to the more extreme limitations opined to by Nurse McCarter and Dr. Burnside; indeed, the ALJ found Plaintiff somewhat more limited than the DDS psychological consultants did.

Finally, the ALJ did not rely solely on the moderate GAF scores. As discussed above, the ALJ cited the normal mental status exam findings, the other positive treatment notes, and the DDS psychological consultants' opinions. The ALJ also found Plaintiff's subjective statements about the severity of her symptoms were not entirely consistent with the evidence in the record, a finding

14

which Plaintiff does not directly challenge and which the Court finds is supported by substantial evidence in the record.

Plaintiff briefly criticizes the ALJ's decision to assign "no evidentiary value" to Nurse McCarter's opinion that Plaintiff "will not be able to work full time again" (Tr. 21 (citing Tr. 925 ("discuss[ed] with patient that she will probably not be able to work FT again"))). Plaintiff argues, "it is difficult to understand how a treating source can be inherently reliable and unreliable in the same instance." [Doc. 12 at Page ID # 1024]. But the ALJ assigned "little weight" to this opinion in Nurse McCarter's records at least partially because "the issue of whether an individual is able to work is an issue reserved to the Commissioner." (Tr. 22).

Plaintiff also briefly criticizes the ALJ's mention of 2015 treatment note wherein Dr. Goyne recommended intensive outpatient treatment, but Plaintiff declined [Tr. 21]. Plaintiff argues that, "[i]t seems a stretch of logic to assume a mental health patient's refusal to accept additional counseling is dispositive of a non-disabling impairment." [Doc. 12 at Page ID # 1025]. Again, a fair-minded reading of the ALJ's decision shows that this one treatment note was not dispositive of Plaintiff's claim. It was part of an overall discussion of the history of Plaintiff's condition.

In sum, the ALJ did not err in basing her decision in part on the GAF scores to find Plaintiff had no greater than moderate mental health functioning limitations. Indeed, the ALJ was required to address the GAF scores under the applicable regulations and AM-13066 Rev 2. Further, the ALJ did not "cherry pick" the evidence in support of disability; she weighed evidence that detracted from her decision as well as evidence that supported it. *See White v. Comm'r of Soc. Sec.*, 572 F. 3d 272, 284 (6th Cir. 2009) (holding "we see little indication that the ALJ improperly

15

cherry picked evidence; the same process can be described more neutrally as weighing the evidence"); *accord DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (noting that "cherry picking" allegations are seldom successful because crediting them would require courts to re-weigh record evidence). The Sixth Circuit has consistently upheld the discretion vested in ALJs to weigh conflicting record evidence in assessing disability status. *See White*, 572 F. 3d at 284.

## V. CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

(1) Plaintiff's motion for judgment on the pleadings [Doc 11] is **DENIED**;

(2) the Commissioner's motion for summary judgment [Doc. 15] is **GRANTED**; and

(3) the Commissioner's decision denying benefits is **AFFIRMED**.

SO ORDERED.

ENTER:

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

16